**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| MARGIE DANIEL; MARY HAUSER; DONNA GLASS; ANDREA DUARTE, individually and on behalf of a class of similarly situated individuals, *Plaintiffs-Appellants*, | No. 13-16476<br><br>D.C. No. 2:11-cv-02890-WBS-EFB |
| v. | |
| FORD MOTOR COMPANY, a Delaware corporation, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

Argued and Submitted
October 22, 2015—San Francisco, California

Filed December 2, 2015

Before: Stephen Reinhardt and Michael Daly Hawkins, Circuit Judges and Donald W. Molloy,[*] Senior District Judge.

Opinion by Judge Molloy

---

[*] The Honorable Donald W. Molloy, Senior District Judge for the U.S. District Court for the District of Montana, sitting by designation.

## SUMMARY[**]

### Warranty

The panel reversed the district court's summary judgment in favor of Ford Motor Company in a putative class action in which plaintiffs alleged that Ford breached implied and express warranties and committed fraud in the sale of model year 2005 to 2011 Ford Focus vehicles containing rear suspension defects.

The panel held that the district court erred when it declined to follow a California appellate decision, *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 295 (Ct. App. 2009) (holding that "latent defects" may breach the implied warranty even when they are not discovered within the implied warranty's duration), and reversed the summary judgment as to the California Song-Beverly Consumer Warranty Act claims of plaintiffs Hauser, Glass, and Duarte.

Concerning plaintiffs' claim of breach of express warranty under the California Commercial Code, the panel held that given the ambiguous terms of Ford's express warranty, the warranty must be construed to guarantee both manufacturing and design defects. The panel reversed the district court's order granting summary judgment as the breach of express warranty claims of plaintiffs Daniel and Duarte.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that plaintiffs created a genuine issue of material fact as to whether they actually relied on Ford's omissions in purchasing the Focus, and reversed the district court's summary judgment on their claims under California's Consumer Legal Remedies Act and Unfair Competition Law.

Finally, the panel declined to address issues not addressed by the district court. Because the panel reversed plaintiffs' implied and express warranty claims, the panel also reversed the district court's order granting summary judgment as to the Magnuson-Moss Warranty Act claims. In light of the reversal, the panel instructed the district court to reconsider its denial of plaintiffs' motion for class certification.

## COUNSEL

Eric Grant (argued), John B. Thomas, and Kelsey McDowell, Hicks Thomas LLP, Sacramento, California; J. Allen Carney and Tiffany Wyatt Oldham, Carney Bates & Pulliam PLLC, Little Rock, Arkansas, for Plaintiffs-Appellants.

John M. Thomas (argued) and Krista L. Lenart, Dykema Gossett PLLC, Ann Arbor, Michigan, for Defendant-Appellee.

**OPINION**

MOLLOY, Senior District Judge:

The focus of this case is whether Ford Motor Company sold the plaintiffs a pig in the poke[1] when each of them purchased a Ford Focus.  The answer to that question is complicated by a dispute over the interpretation of the Song-Beverly Consumer Warranty Act by the California Court of Appeal and whether that court's decision is binding on federal courts in diversity cases.  If it is, the consequence negatively impacts the trial court's determination of the Magnuson-Moss Warranty Act in this case.  There is also a concern about the warranties, focused on whether the language written by Ford is ambiguous.  Finally, there is the question of whether the record here can be construed to show reliance in favor of the plaintiffs when they admittedly did not read available materials about the Ford Focus.  The district court granted summary judgment in favor of Ford. We reverse.

I.  Background

The plaintiffs, Margie Daniel, Mary Hauser, Donna Glass, and Andrea Duarte[2] (collectively "Plaintiffs"), brought this class action against Ford, alleging that Ford breached implied

---

[1] The English colloquialisms such as "turn out to be a pig in a poke" or "buy a pig in a poke" mean that something is sold or bought without the buyer knowing its true nature or value, especially when buying without inspecting the item beforehand.

[2] A fifth plaintiff, Robert McCabe, withdrew as a named plaintiff, and Plaintiffs are not pursuing his claims.

and express warranties and committed fraud in the sale of model year 2005 to 2011 Ford Focus vehicles containing rear suspension defects. Plaintiffs purchased their Ford Focus vehicles from authorized Ford dealerships in California. With each purchase, Plaintiffs received a New Vehicle Limited Warranty. Prior to purchase, they did not research the Focus or view brochures, websites, or advertisements about the Focus. Nor did they read the warranty, maintenance, or owner's guides that came with the new vehicles prior to purchasing them. However, Plaintiffs did speak to authorized Ford dealership sales representatives about the Focus when they made their purchases. After purchase, Plaintiffs' Focuses required new rear tires for the first time between 12,086 and 20,723 miles.

Plaintiffs allege that the Focus has a rear suspension "alignment/geometry" defect that leads to premature tire wear, which in turn leads to safety hazards such as decreased control in handling, steering, stability, and braking, the threat of catastrophic tire failure, and drifting while driving on wet or snow-covered roads. Ford allegedly knew or should have known about the defect through pre-release testing data, consumer complaints to Ford dealerships, testing conducted in response to those complaints, aggregate data from Ford's dealerships, and from other internal sources. Plaintiffs allege Ford had a duty to disclose the defect but failed to do so at the time of sale. Plaintiffs further allege that, had they known about the defect, they would not have purchased the Focus.

Plaintiffs instituted this putative class action against Ford on November 2, 2011, asserting five claims: (1) violation of California's Consumers Legal Remedies Act, Cal Civ. Code §§ 1750–1784; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210;

6         DANIEL V. FORD MOTOR CO.

(3) breach of implied warranty under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790–1795.8; (4) breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312; and (5) breach of express warranty under Cal. Com. Code § 2313.

After Plaintiffs moved to certify a class defined as "[a]ll individuals who purchased or leased any 2005 through 2011 Ford Focus vehicle in California and who currently reside in the United States," Ford moved for summary judgment. First, the district court granted summary judgment on Plaintiffs' Consumers Legal Remedies Act and Unfair Competition Law claims because the court concluded that Plaintiffs failed to show reliance. Second, the district court granted summary judgment on the Song-Beverly Consumer Warranty Act claims of Plaintiffs Hauser, Glass, and Duarte because the court concluded that they failed to present evidence that their vehicles became unmerchantable within the duration of the implied warranty. Third, the district court granted summary judgment on the breach of express warranty claims of Plaintiffs Daniel and Duarte because the court concluded that the New Vehicle Limited Warranty did not cover the alleged design defect. Finally, the district court granted summary judgment on Plaintiffs' Magnuson-Moss Warranty Act claims because those claims depend on Plaintiffs' warranty claims. The district court also denied Plaintiffs' motion for class certification. In accordance with Federal Rule of Civil Procedure 54(b), the district court entered final judgment. Plaintiffs timely appealed.

II.  Discussion

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review orders granting summary judgment *de novo*." *Clevo*

*Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1193 (9th Cir. 2013). We apply "the same principles as the district court: whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting *Bamonte v. City of Mesa*, 598 F.3d 1217, 1220 (9th Cir. 2010)).

Plaintiffs raise three issues on appeal: (1) whether summary judgment was improper because the district court declined to follow a California appellate court decision that held that "latent defects" may breach the implied warranty even when they are not discovered within the implied warranty's duration; (2) whether summary judgment was improper because the district court interpreted the language in Ford's express warranty that specifically references defects "introduced into vehicles during the design . . . process[]" to exclude design defects; and (3) whether summary judgment was improper because the district court did not credit dealership omission evidence that Plaintiffs submitted to establish reliance. We address each in turn.

### A. Breach of Implied Warranty under the Song-Beverly Consumer Warranty Act

Pursuant to the Song-Beverly Consumer Warranty Act, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Pertinent to this appeal, the Act contains a one-year durational limitation:

> The duration of the implied warranty of merchantability and where present the implied

>  warranty of fitness shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days *nor more than one year* following the sale of new consumer goods to a retail buyer. Where no duration for an express warranty is stated with respect to consumer goods, or parts thereof, the duration of the implied warranty shall be the maximum period prescribed above.

Cal. Civ. Code § 1791.1(c) (emphasis added). Yet the California Court of Appeal held in *Mexia v. Rinker Boat Co.* that "[t]here is nothing that suggests a requirement that the purchaser discover and report to the seller a *latent* defect within that time period." 95 Cal. Rptr. 3d 285, 295 (Ct. App. 2009) (emphasis added).

"We 'must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.'" *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Owen ex. rel Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)). Here, there is not convincing evidence that the California Supreme Court would decide the latent defect discovery issue that was presented in *Mexia* differently. The California Supreme Court denied the *Mexia* defendants' petition for review and denied a non-party's request for "depublication" of the opinion. *See Appellate Courts Case Information*, The Judicial Branch of California, http://appellatecases.courtinfo.ca.gov/search/case/

DANIEL V. FORD MOTOR CO. 9

disposition.cfm?dist=0&doc_id=1914874&doc_no=S174901 (last visited Oct. 28, 2015). No published California Court of Appeal opinion has addressed or rejected the *Mexia* holding. Two unpublished decisions reiterated the one-year duration set forth in § 1791.1, but neither cited *Mexia*. *Balakian v. Mercedes-Benz USA, LLC*, No. F060461, 2011 WL 6826723, at *7 n.8 (Cal. Ct. App. Dec. 29, 2011) (unpublished); *Larsen v. Nissan N. Am., Inc.*, No. A121838, 2009 WL 1766797, at *6 (Cal. Ct. App. June 23, 2009) (unpublished). The two unpublished decisions that have referenced the *Mexia* rule did so without disapproval. *Clark v. BMW of N. Am., LLC*, B248593, 2014 WL 3907922, at *6 (Cal. Ct. App. Aug. 12, 2014) (unpublished); *Lugo v. Good Guys Auto Sales, Inc.*, D061620, 2013 WL 5411650, at *7 (Cal. Ct. App. Sept. 27, 2013) (unpublished).[3] While California federal district courts have given *Mexia* mixed treatment, *see, e.g.*, *Valencia v. Volkswagen Grp. of Am. Inc.*, __ F. Supp. 3d __, No. 15–cv–00887–HSG, 2015 WL 4747533, at *6–7 (N.D. Cal. Aug. 11, 2015) (discussing cases on both sides and distinguishing *Mexia* based on a reading that limits the holding to cases involving products that were unmerchantable at the time of purchase); *Rossi v. Whirlpool Corp.*, No. 12–CV–125–JAM–JFM, 2013 WL 1312105, at *5 (E.D. Cal. Mar. 28, 2013) (rejecting *Mexia*); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 537 (C.D. Cal. 2012) (following *Mexia*), we must adhere to state court decisions—not federal

---

[3] "Even though unpublished California Courts of Appeal decisions have no precedential value under California law, the Ninth Circuit is 'not precluded' from considering such decisions 'as a possible reflection of California law.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011) (quoting *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)).

court decisions—as the authoritative interpretation of state law. *W. v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237–38 (1940).

Ford argues that *Mexia* conflicts with the earlier decision in *Atkinson v. Elk Corp. of Texas*, 48 Cal. Rptr. 3d 247 (Ct. App. 2006). But *Mexia* and *Atkinson* are not in "plain conflict." *Cf. Owen ex. rel Owen*, 713 F.2d at 1465. In *Atkinson*, the pertinent issue was "what is the duration of implied warranty of merchantability under Magnuson-Moss," and the court concluded that § 1791.1 controls. 48 Cal. Rptr. 3d at 257–59. The precise issue of whether § 1791.1 "create[s] a deadline for discovering latent defects," which was addressed in *Mexia*, 95 Cal. Rptr. 3d at 288, was not at issue in *Atkinson*. Additionally, the *Mexia* court relied on *Atkinson* approvingly without noting any inconsistency, *id.* at 295 n.10, and *Mexia* is consistent with an earlier case, *Hicks v. Kaufman & Broad Home Corp.*, 107 Cal. Rptr. 2d 761, 768 (Ct. App. 2001) (holding that "proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product"). Further, the *Mexia* decision is in line with "the policy repeatedly expressed by California courts of the need to construe the Song-Beverly Act so as to implement the legislative intent to *expand* consumer protection and remedies." *Mexia*, 95 Cal. Rptr. 3d at 296.

Absent convincing evidence that the California Supreme Court would decide the issue in *Mexia* differently, its rule that § 1791.1 "does not create a deadline for discovering latent defects or for giving notice to the seller," 95 Cal. Rptr. 3d at 288, must be followed. Accordingly, the district court's order granting summary judgment as to the Song-Beverly

Consumer Warranty Act claims of Plaintiffs Hauser, Glass, and Duarte is reversed.[4]

### B. Breach of Express Warranty under the California Commercial Code

California Commercial Code § 2313 governs express warranties by the seller. Ford provided Plaintiffs a New Vehicle Limited Warranty with the purchase of their Focuses. The express warranty states:

> WHAT IS COVERED?
>
> Your NEW VEHICLE LIMITED WARRANTY gives you specific legal rights. You may have other rights that vary from state to state. Under your New Vehicle Limited Warranty if:
>
> – your Ford vehicle is properly operated and maintained, and
>
> – was taken to a Ford dealership for a warranted repair during the warranty period,
>
> then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect

---

[4] The district court denied summary judgment as to Plaintiff Daniel's Song-Beverly Consumer Warranty Act claim.

> in factory-supplied materials or factory workmanship.
>
> This warranty does not mean that each Ford vehicle is defect free. Defects may be unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs. For this reason, Ford provides the New Vehicle Limited Warranty in order to remedy any such defects that result in vehicle part malfunction or failure during the warranty period.

Ford relies on the first paragraph to argue that the warranty only guarantees against manufacturing defects. Plaintiffs rely on the second paragraph to argue that the defects that are guaranteed against include design defects.

"In relation to express warranties, the rules for interpreting them do not differ from those applied to other contracts." *Miller v. Germain Seed & Plant Co.*, 222 P. 817, 829 (Cal. 1924) (Seawell, J., dissenting) (internal quotation marks omitted). Where a contract provision is "clear and unambiguous," it is "not subject to questions of construction or interpretation." *Neal v. State Farm Ins. Cos.*, 10 Cal. Rptr. 781, 783 (Ct. App. 1961) (internal quotation marks omitted). "A . . . provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 718 P.2d 920, 924–25 (Cal. 1986) (quoting *Delgado v. Heritage Life Ins. Co.*, 203 Cal. Rptr. 672, 677 (Ct. App. 1984)). "The rule that any ambiguities caused by the draftsman of the contract must be resolved against that party applies with peculiar force

DANIEL V. FORD MOTOR CO. 13

in the case of the contract of adhesion." *Neal*, 10 Cal. Rptr. at 784 (internal citations omitted). "Whether language in a contract is ambiguous is a question of law." *Producers Dairy Delivery Co.*, 718 P.2d at 925.

Ford argues that the "materials and workmanship" language in the first paragraph excludes guarantees against design defects. *See Rice v. Sunbeam Prods., Inc.*, No. CV 12–7923–CAS–(AJWx), 2013 WL 146270, at *12 (C.D. Cal. Jan. 27, 2013) (considering the phrase "free from defects in material and workmanship" in defendant's warranty); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.* (*Toyota Motor Corp. Litig.*), 754 F. Supp. 2d 1145, 1177–78 (C.D. Cal. 2010) (considering defendant's warranty language that stated, "This warranty covers repairs and adjustments needed to correct defects in material or workmanship of any part supplied by Toyota."); *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 WL 485979, at *2 (N.D. Cal. Feb. 12, 2007) (considering language in defendant's warranty that stated, "HP warrants that the HP hardware product and all internal components of the product that you have purchased or leased from HP are free from defects in materials and workmanship under normal use during the Limited Warranty Period.").

However, unlike the warranties in the cases cited by Ford, Ford's express warranty is not simply a "materials and workmanship" warranty, as it references defects that are introduced during the "design" process. Ford's express warranty is ambiguous. The warranty can reasonably be interpreted to either guarantee against only manufacturing defects (where the second paragraph is a general explanation and not a guarantee) or guarantee against both manufacturing and design defects (where the second paragraph expands the

14         DANIEL V. FORD MOTOR CO.

guarantee to design defects). The ambiguity, which is without question within a contract of adhesion, must be resolved against the draftsman, Ford. *Neal*, 10 Cal. Rptr. at 784. The warranty must be construed to guarantee against both manufacturing and design defects.

Given the ambiguous terms of Ford's express warranty, the district court's order granting summary judgment as to the breach of express warranty claims of Plaintiffs Daniel and Duarte is reversed.[5]

### C. Consumers Legal Remedies Act and Unfair Competition Law

The Consumers Legal Remedies Act prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services." Cal. Civ. Code § 1770(a). The Act proscribes "[r]epresenting that goods or services have . . . characteristics . . . uses, benefits, or quantities which they do not have," *id.* § 1770(a)(5), and "[r]epresenting that goods or services are of a particular standard, quality, or grade," *id.* § 1770(a)(7). The Unfair Competition Law proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Fraudulent omissions are actionable under both consumer statutes. *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 324–26 (Ct. App. 2012).

---

[5] Plaintiff Hauser did not oppose summary judgment on her express warranty claim, and Plaintiff Glass does not challenge the district court's ruling on appeal.

An essential element for a fraudulent omission claim is actual reliance. *Cohen v. DIRECTV, Inc.*, 101 Cal. Rptr. 3d 37, 47–48 (Ct. App. 2009) (Consumers Legal Remedies Act); *In re Tobacco II Cases* (*Tobacco II*), 207 P.3d 20, 39 (Cal. 2009) (Unfair Competition Law). To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision. *Tobacco II*, 207 P.3d at 39. A plaintiff may do so by simply proving "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993).

That one would have behaved differently can be presumed, or at least inferred, when the omission is material. *Tobacco II*, 207 P.3d at 39. An omission is material if a reasonable consumer "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (quoting *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997)). Alleged defects that create "unreasonable safety risks" are considered material. *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 917–19 (C.D. Cal. 2010) (windshield with high propensity to crack or chip); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095–96, 1096 n.* (N.D. Cal. 2007) (defective speedometer); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–43 (9th Cir. 2012) (holding in the duty-to-disclose context that an omission must pose safety concerns to be material). Materiality is judged from the perspective of a "reasonable consumer," *Ehrlich*, 801 F. Supp. 2d at 916, and it is generally a question of fact, *Tobacco II*, 207 P.3d at 39.

16 DANIEL V. FORD MOTOR CO.

Here, Plaintiffs have offered sufficient evidence to create a genuine issue of material fact as to the second sub-element of reliance—whether they would have behaved differently if Ford had disclosed the alleged defect. A reasonable fact finder could infer that a vehicle that experiences premature and more frequent tire wear would pose an unreasonable safety risk, such that it can be presumed that the nondisclosure of the safety risk impacted Plaintiffs' purchasing decision. Plaintiffs have put forth sufficient evidence, when viewed in a light most favorable to them, that the Focus experienced premature and more frequent tire wear, and that Ford circulated special service messages to its authorized dealerships informing them that "some 2005–2011 Focus vehicles may exhibit premature front/rear tire wear and/or a vehicle drift condition when driving on wet or snow packed roads." Plaintiffs' experts opined that worn tires can pose a safety hazard in terms of road and weather conditions and potential blowouts. Even Ford acknowledges that "it can be dangerous to let the tires on *any* vehicle become excessively worn before replacing them." Brief for Appellee at 25. Ford's evidence that routine monitoring of the tires would have prevented safety problems and that excessive tire wear is not uniquely attributable to the Focus does not conclusively rebut the presumption of reliance. *See Engalla*, 938 P.2d at 919.

Whether Plaintiffs have created a genuine issue of material fact as to the first sub-element—that they would have been aware of a disclosure by Ford—is a closer question, but we ultimately conclude that they did. There are, of course, various ways in which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been made. Here, Plaintiffs chose to do so by showing that they would have been aware of the defect had Ford disclosed

DANIEL V. FORD MOTOR CO. 17

it to its dealerships. Ford presented evidence that conclusively establishes that Plaintiffs did not view any advertising materials produced by Ford prior to purchase.[6] But Plaintiffs presented evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses. This is sufficient to sustain a factual finding that Plaintiffs would have been aware of the disclosure if it had been made through Ford's authorized dealerships. *Mirkin*, 858 P.2d at 575.

Ford argues that Plaintiffs need to show more than that it was hypothetically possible for Ford to disseminate information through its dealerships. Ford suggests that Plaintiffs should be required to show that the dealerships were contractually obligated to pass on disclosures to consumers or that dealerships would voluntarily do so. Plaintiffs do not have such evidence. However, Plaintiffs do have evidence that Ford communicates indirectly through its authorized dealerships. Plaintiffs received information about the "characteristics," "benefits," and "quality," Cal. Civ. Code § 1770(a)(5), (7), of the Ford Focus from Ford's dealerships, which is also where they could obtain certain brochures and booklets about Ford's vehicles. Under the terms of Ford's express warranty, Plaintiffs needed to return

---

[6] It would have been unlikely for Plaintiffs to review warranty, maintenance, and owner's booklets that came with the new vehicles prior to purchase. Consequently, those materials cannot be considered in determining whether Plaintiffs would have been aware of a disclosure. *Cf. Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200–01 (N.D. Cal. 2014) (concluding reliance cannot be based on representations or omissions that took place after sale occurred); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969–70 (S.D. Cal. 2012) (concluding it was impossible to establish reliance on information in Terms of Service received after purchase).

to Ford dealerships to perform warranty repairs. And it is through its dealership network that Ford circulated its special service messages and technical service bulletins when issues arose with the Focus. Based on this evidence, a reasonable fact finder could conclude that Ford knew that its consumers depended at least in part on its authorized dealerships for information about its vehicles and that Ford's authorized dealerships would have disclosed the alleged rear suspension defect to consumers if Ford had required it. Since Plaintiffs have sufficient evidence to establish a plausible method of disclosure and to establish that they would have been aware of information disclosed using that method, there is a genuine issue of material fact as to whether they in fact relied on Ford's omissions in purchasing the Focus.

Because Plaintiffs have raised a genuine issue of fact as to reliance, the district court's order granting summary judgment on their Consumers Legal Remedies Act and Unfair Competition Law claims is reversed.

### D.  Additional Issues Raised by Ford

Because the district court did not address duty to disclose, actual damages, statutorily-required notice, statute of limitations, equitable restitution, and sufficiency of the evidence of tire wear, we decline to do so on appeal. *Peterson v. Boeing Co.*, 715 F.3d 276, 283 (9th Cir. 2013) (declining to reach the "alternate, fact-intensive bases for affirming" when not first addressed by the district court).

### E.  Magnuson-Moss Warranty Act

Claims under the Magnuson-Moss Warranty Act "stand or fall with . . . express and implied warranty claims under

state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Because we reverse on Plaintiffs' implied and express warranty claims, the district court order granting summary judgment as to the Magnuson-Moss Warranty Act claims is also reversed.

### III. Conclusion

We reverse the district court's summary judgment order and remand for further proceedings consistent with this opinion. In light of our reversal, we also instruct the district court to reconsider its denial of Plaintiffs' motion for class certification.

**REVERSED** and **REMANDED** with instruction.